WOODWARD & LOTHROP, Inc., v. UNION TRUST CO. OF ROCHESTER, N. Y., et al.

UNION TRUST CO. OF ROCHESTER, N. Y., et al. v. WOODWARD & LOTHROP, Inc.

(Court of Appeals of District of Columbia. Submitted December 1, 1919. Decided January 5, 1920.)

Nos. 3260, 3261.

1. MECHANICS' LIENS ⬤⟶225—OWNER PAYING MONEY INTO COURT BEFORE SUIT PROTECTED.

Under Code of Law 1901, §§ 1239, 1246, 1254, 1255, providing that an owner may pay money demanded in mechanic's lien suit into court and be relieved from further liability, a payment into court by an owner after a subcontractor had filed a lien, but before suit had been started, and later applied by the court to pay such subcontractor's lien, constitutes a substantial compliance with the statute, and the owner is not liable to pay such sum a second time to the contractor's assignee.

2. MECHANICS' LIENS ⬤⟶268—OWNER NEED NOT NOTIFY CONTRACTOR'S ASSIGNEES OF SUBCONTRACTOR'S SUIT.

An owner need not notify a contractor's assignees that a subcontractor had instituted a mechanic's lien suit against it.

3. INTEREST ⬤⟶1—NOT RECOVERABLE WHERE CREDITOR PREVENTS PAYMENT.

Ordinarily, interest is not recoverable where payment is prevented by the creditor.

4. MECHANICS' LIENS ⬤⟶161(4)—OWNER NOT REQUIRED TO PAY INTEREST ON BALANCE DUE CONTRACTOR.

Where the amount an owner owed a contractor was rendered uncertain by the owner's claim that a substantial allowance should be made for inferior work and mechanic's lien proceedings instituted by subcontractors, held, that interest on the balance due from the owner to the contractor was properly disallowed.

Smyth, Chief Justice, dissenting.

Appeals from the Supreme Court of the District of Columbia.

Mechanic's lien proceedings by the Garden City Plating & Manufacturing Company against Woodward & Lothrop, Incorporated, in which the Union Trust Company and the Central Bank, both of Rochester, N. Y., intervened. From a decree sustaining exceptions to a special

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

master's report, Woodward & Lothrop, Incorporated, appeal; and from a decree overruling exceptions to the master's report, the interveners appeal. Reversed on first-named appeal, and affirmed on the second appeal.

B. W. Parker, of Washington, D. C., for Woodward & Lothrop, Incorporated.

W. G. Johnson, of Washington, D. C., for Union Trust Co. of Rochester, N. Y., and another.

ROBB, Associate Justice. These appeals involve a decree in the Supreme Court of the District sustaining certain exceptions and overruling other exceptions to the report of a special master in a case growing out of a suit to enforce mechanics' liens.

In June of 1913 Woodward & Lothrop contracted with F. T. Nesbitt Company, of New York, for the erection of a store building at Eleventh and F. Streets, Northwest, in this city, and at about the same time contracted with the John Hofman Company, of Rochester, N. Y., for the furnishing and installation, for $31,000, of the store fixtures in the new building and in parts of the adjoining old building. This installation was completed in December following.

During the month of September, 1913, and while the contract of the Hofman Company was being executed, that company borrowed sums of money from the Central Bank of Rochester aggregating more than $16,000, for which it gave its promissory notes and executed assignments of money due and to become due from Woodward & Lothrop; the balance due under these assignments when the work was completed being $9,280. During the same month the Hofman Company borrowed from the Union Trust Company of Rochester $5,000 under the same conditions, and there was a balance due under that assignment to this bank of $2,170 at the completion of the contract.

Shortly after the execution of the above assignments the Hofman Company became financially embarrassed, and on November 8, 1913, the company notified its creditors that a petition for voluntary dissolution had been filed in New York, and that G. Albert Taylor had been appointed temporary receiver. On December 26th following the company was adjudged a bankrupt, and Mr. Taylor subsequently was appointed trustee. On November 11, 1913, the Union Trust Company notified Woodward & Lothrop of its assignment from the Hofman Company, and on November 14th following wrote Woodward & Lothrop that it might disregard the former notice, and might make settlement "direct with the receiver, G. Albert Taylor." The Central Bank first notified Woodward & Lothrop of its assignment from Hofman & Co. on January 13, 1914. On the same day the Union Trust Company wrote Woodward & Lothrop, requesting direct payment to the bank under its assignment.

Among the subcontractors of the Hofman Company was the Pittsburgh Plate Glass Company, and on the 27th of December, 1913, it filed in the court below its notice of lien in the sum of $3,286.53. On the 30th of December following an order was passed in the court below, authorizing Woodward & Lothrop to pay into the registry of the court

"the sum of $3,286.53 the amount of the claim of the lienor in these proceedings, together with the sum of $200 to cover interest and costs"; the order further reciting that "upon the payment of said moneys into the court in accordance with the terms of section 1254 of the Code, the property shall be released, and the money so paid shall be subject to the final decree of the court." On January 21, 1914, pursuant to the provisions of the Code, the Pittsburgh Company filed its bill of complaint in the court below to enforce the lien theretofore asserted. Service was made on the Hofman Company by publication and by notice to their last known place of residence in Rochester. Woodward & Lothrop made answer, stating, among other things, that it was without knowledge of the terms of the contract alleged to have been entered into between the Hofman Company and the Pittsburgh Plate Glass Company, claimed that certain adjustments would be necessary, owing to defective work by the Hofman Company, and directed attention to the deposit it had made and to the bankruptcy of the Hofman Company. On February 4, 1915, about a year after the filing of its bill, the court entered a decree confirming the lien of the plaintiff, the Pittsburgh Plate Glass Company, in the amount claimed, and directing that amount to be paid plaintiff or its attorney of record from the sum deposited in court, which payment thereupon was made.

Numerous other subcontractors of the Hofman Company filed notice of liens during December of 1913 and January of 1914, and on April 20, 1914, the Garden City Plating & Manufacturing Company, one of these lienors, filed a bill for the enforcement of its lien against Woodward & Lothrop and the Hofman Company, and also naming the other lienors, including the Pittsburgh Plate Glass Company, as defendants. In that bill were detailed the proceedings culminating in the decree in favor of the Pittsburgh Plate Glass Company.

On October 26, 1915, a decree pro confesso was taken against the Hofman Company, and on November 10th following this decree was set aside on motion of counsel for the Hofman Company. On the same day the Hofman Company and the two banks, by leave of court, filed intervening petitions in the suit of the Garden City Company, one of the banks claiming $9,280 and the other $2,170 under the assignments already mentioned. Leave to file a similar petition also was sought and obtained by the trustee in bankruptcy of the Hofman Company, but no petition was filed.

While the record does not definitely disclose who then represented the banks, it is fair to assume that the counsel who obtained the setting aside of the pro confesso decree, and thereby laid the foundation for the filing of the intervening petitions by the banks also represented them. This inference is supported by the fact that since that time he has represented the banks. The intervening petitions of the two banks are silent as to the averments in the main petition concerning the suit of the Pittsburgh Plate Glass Company; the allegation being merely that the claims of the interveners are paramount to those of the plaintiff or of any of the defendants. The cause was referred to a special master, to report findings of fact and conclusions of law.

At the first session before the special master on November 15, 1915,

which it will be observed was subsequent to the filing of the intervening petitions, it was stipulated between counsel for Woodward & Lothrop and counsel for the lienors that the balance due from Woodward & Lothrop to the Hofman Company was $6,013.60, and that no claim would be made against Woodward & Lothrop for any sum in excess of the amount admitted to be due. Hearings were had before the special master, and on September 30, 1918, his report was filed. The master found that the furnishings supplied under the Hofman contract by the various subcontractors, asserting their claims in the proceedings, were not affixed to the realty, and hence were not fixtures within the meaning of the mechanic's lien statute. He further found that the loans of the two banks were made in good faith and that the assignments were not affected by the bankruptcy proceeding; "that the payment into court in the mechanic's lien case of the Pittsburgh Plate Glass Company to discharge an alleged lien, which would have been a cloud upon the title of the said Woodward & Lothrop, Incorporated, having been paid by order of the court to the alleged lienor, Woodward & Lothrop, Incorporated, are not bound to pay the money over again." The master further observed that "the assignees cannot complain of this result, because their failure to give notice of their assignments to Woodward & Lothrop would be sufficient to protect the latter in making any lawful payment out of the fund." The master accordingly found the amount due from Woodward & Lothrop to be the amount stipulated on November 15, 1915. The record does not disclose that any claim was made for interest.

To this report the bank filed exceptions, claiming that Woodward & Lothrop was not entitled to credit for the money paid into court in the Pittsburgh Plate Glass Company's suit, and that interest should have been allowed on the balance due from Woodward & Lothrop on December 30, 1913. The first of these exceptions was sustained, and the second overruled. Accordingly, Woodward & Lothrop appealed from the first, and the banks appealed from the second, ruling.

[1] We first will consider the appeal of Woodward & Lothrop. Under the provisions of section 1239 of the Code a subcontractor is entitled to a mechanic's lien, and that lien is declared by section 1245 to be superior "to all judgments, mortgages, deeds of trusts, liens, and incumbrances which attach upon the building or ground affected by said lien subsequently to the commencement of the work upon the building," etc. This lien must be enforced by a bill in equity. Section 1246. Under section 1254, when such a suit has been filed, the owner of the building affected "may be allowed to pay into court the amount claimed by the lienor, and such additional amount, to cover interest and costs, as the court may direct," or he may file a written undertaking, with sureties to be approved by the court after notice to the defendant. "On the payment of said money into court, or the approval of such undertaking, the property shall be released from such lien, and any money so paid in shall be subject to the final decree of the court." Section 1255 provides that a similar undertaking may be offered before any suit is brought. The contention of counsel for the appellee banks is that the payment into court by Woodward & Lothrop, having been made be-

fore the suit of the Pittsburgh Plate Glass Company was filed, was unauthorized by statute.

The evident purpose of sections 1254 and 1255 is to enable the owner, against whose building or fixtures a lien has been asserted, to be relieved of the embarrassment of the lien through the payment into court of a sum equal to the amount of the lien with interest and costs, or the filing of an undertaking to cover that amount. Where admittedly an amount is due the principal contractor, and the lien is asserted by a subcontractor, there is no contest between the owner and the subcontractor; the issue being restricted to the contractor and subcontractor. If the owner does not take advantage of these provisions of the Code for the release of the lien, the statute imposes upon him no duty to notify the contractor of the pendency of the subcontractor's suit. In the present case, had Woodward & Lothrop failed to take advantage of the provisions of either of these sections of the Code, the result would have been exactly the same, for, after the Pittsburgh Company had obtained a final decree confirming its lien, Woodward & Lothrop would have been fully protected in satisfying that decree.

How, then, were the banks prejudiced in any way by what actually was done? The Pittsburgh Company had asserted its lien, the court authorized the payment into its registry of the amount claimed, and when the suit was filed that amount was in court, where it was treated as a deposit under the statute, and from that time on exactly the same procedure was followed as though the filing of the suit had preceded the deposit. In substance and effect there was a compliance with the terms of the statute. To hold otherwise would be to prefer form to substance, and impose upon the owner a duty not contemplated by the statute. It will be observed that no notice is required under section 1254, where a money payment is made by the owner; the theory evidently being that cash speaks for itself, and that no one possibly could be prejudiced by the substitution of cash for the obligation of the owner to pay the amount due under its contract. It was for this reason that section 1255 makes no mention of a cash payment. The object of the filing of an undertaking is to release the property from the lien and to satisfy the final decree. When the suit of the Pittsburgh Company was instituted, therefore, the court had a right to treat the payment of Woodward & Lothrop as a payment made on account of that suit. There the responsibility of Woodward & Lothrop ended, for money thus paid into court no longer is under the control of the owner, but of the court.

[2] Counsel for the banks contend that Woodward & Lothrop should have notified them of the suit of the Pittsburgh Plate Glass Company. It is significant, this being a proceeding in equity, that in their intervening petition the banks did not allege their lack of knowledge in this connection. Moreover, on December 12, 1913, the receiver of the Hofman Company, in a letter to Woodward & Lothrop, announced his purpose to come to Washington on a day certain to "straighten out the tangle." To do this he was to interview "the attorneys acting for Hofman creditors." On January 14, 1914, after the receiver had been appointed trustee in bankruptcy, he notified

Woodward & Lothrop that, inasmuch as the banks "were the chief parties at interest," he would turn the facts in his possession over to them. It is inconceivable, in the circumstances, that these banks should have made no inquiry during the year intervening between the filing of the suit of the Pittsburgh Company and the decree under which its lien was confirmed and payment made out of the registry of the court in satisfaction of the decree. Such quiescence is not customary with banks. But, however that may be, Woodward & Lothrop owed them no duty in the premises. The suit was of record, and their remedy, if any, must have been obtained therein.

Counsel assert that it should have been ruled in this proceeding that the asserted lien of the Pittsburgh Plate Glass Company was without foundation. That question was not before the court, having been finally adjudicated in another proceeding.

[3, 4] We now will consider the appeal of the two banks from the action of the court in disallowing interest. It is a general rule that interest is not recoverable where payment is prevented by the act of the creditor. Thompson v. Boston & Maine R. R., 58 N. H. 524; Le Branthwait v. Halsey, 9 N. J. Law, 4; Bowman v. Wilson (C. C.) 12 Fed. 864. In the present case it is insisted that Woodward & Lothrop might have paid the money into court by filing an intervening petition. It is apparent from the foregoing recital of the facts that the situation was decidedly complicated. Woodward & Lothrop claimed a very substantial allowance on account of poor work, and this allowance ultimately was made. That Woodward & Lothrop were endeavoring to avoid unnecessary delay and expense apparently was recognized by counsel for the lienors when, in November of 1915, they entered into a stipulation to the effect that no interest would be demanded. The banks then had intervened, and at no time prior to the filing of the report of the special master did they raise any question as to interest. Woodward & Lothrop were innocent parties, and they have been compelled to incur a very considerable expense in protecting their interests. They at all times were ready to pay the amount they really owed, and the delay was through no fault of theirs. We think the court below. was right in disallowing the claim to interest.

The decree in No. 3260 is reversed, with costs, and the cause remanded for a decree in conformity with this opinion. The decree in No. 3261 is affirmed, with costs.

No. 3260 reversed.

No. 3261 affirmed.

Mr. Chief Justice SMYTH is of the view that payment into court by an owner, being a statutory right, must be in strict conformity with the statute, and he therefore dissents from the opinion and decree of the court in appeal No. 3260. In appeal No. 3261, he is of the view that Woodward & Lothrop, having had the use of the balance due, should pay interest, and he therefore dissents from the opinion and decree of the court in that cause.